■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v HARRY J. JACOBSEN, Appellant

Defendant raises several issues on appeal, one of which has merit and requires reversal. The principal defense offered by defendant was one of alibi. An alibi witness, one Susan Figueroa, testified that defendant was in Ohio on February 26, 1986, attending a birthday party for her niece. On cross-exam-

ination, the prosecutor elicited testimony from the witness that it took "a couple" of hours to drive from the witness's home in Ohio to Buffalo, The court then interrupted the prosecutor and asked seven questions, attempting to elicit a more specific answer as to the driving time from Buffalo to her Ohio home, ultimately getting information that it takes 2 to 2½ hours to drive from Ohio to Buffalo, Most egregious, after the prosecutor finished cross-examining the witness, the court proceeded to ask the witness 23 questions, encompassing three pages of the transcript, which included inflammatory questions designed to impeach the witness's credibility, such as whether she sleeps with her boyfriend (another alibi witness) and whether she sleeps with defendant when he visits her.

Another alibi witness, one Brock Taylor, testified that he saw defendant at a birthday party in Ohio on February 26, 1986. This witness testified on cross-examination that it takes 2½ to 3 hours to drive from Ohio to Buffalo. After this cross-examination ceased, the court proceeded to ask some 15 questions of the witness concerning the driving time between Buffalo and Ohio, intimating the court's disbelief in the witness's testimony.

The testimony most damaging to defendant's case was elicited by the court from one of the People's witnesses, Martha DeMers. DeMers is the mother of defendant's girlfriend and she lived in the apartment below that of the victim. On direct examination, DeMers testified that about one half hour after the incident, defendant called her apartment and asked for her daughter. The prosecutor asked if defendant told DeMers where he was, and when DeMers answered: "I didn't ask him", the prosecutor dropped that line of questioning. After cross-examination and redirect examination, the court proceeded to ask DeMers 39 questions that flushed out the importance of the testimony about the telephone call, pinpointing the time of the call, thereby emphasizing the proximity in time between the incident and the call and bringing out the fact that a call from defendant at this hour was unusual. Most important, the court elicited testimony that when defendant was not in Buffalo he would call the witness's daughter collect, and on the morning of the attack defendant did not call collect. This piece of evidence severely undercut defendant's alibi testimony. On summation, the prosecutor, although she had not pursued this line of questioning during direct or redirect examination of this witness, emphasized the view that because defendant did not call collect on the morn-

ing of the incident, he was obviously still in Buffalo. The prosecutor, capitalizing on the testimony elicited by the court about the driving time between Buffalo and Jefferson, Ohio, further theorized on summation that defendant called his girlfriend after the incident, then took off for Ohio to establish his alibi.

Although a Trial Judge has a vital role in clarifying confusing testimony and facilitating the orderly and expeditious progress of the trial *(People v Yut Wai Tom,* 53 NY2d 44, 57), "[t]his power must, of course, be exercised sparingly, without partiality, bias or hostility" *(People v Jamison,* 47 NY2d 882, 883). "Where the Trial Judge oversteps the bounds and assumes the role of a prosecutor, however well intentioned the motive there is a denial of a fair trial and there must be a reversal" *(People v Ellis,* 62 AD2d 469, 470). It is not the function of the trial court, however well-motivated, to intrude on behalf of either side in a criminal trial because the court may not agree with the manner in which the case is being presented *(People v Ellis, supra,* at 471; *People v King,* 72 AD2d 930). That the questioning by the court in this case may have been proper if conducted by the prosecutor is of no moment. " 'The prosecution of the case on behalf of the People was the responsibility of the Assistant District Attorney who had been assigned to the matter' " *(People v Keller,* 67 AD2d 153, 162, quoting *People v Ellis, supra,* at 471). In our view, the excessive questioning and examination of witnesses improperly conveyed to the jury the court's attitude as to the merits of the case, as well as to the credibility of the witnesses *(People v Carter,* 40 NY2d 933, 934; *see also, People v Mendes,* 3 NY2d 120, 121).

Because defendant was deprived of a fair trial by the court's questioning, we deem it inappropriate to engage in a harmless error analysis *(see, People v Mees,* 47 NY2d 997, 998).

All concur, except Denman and Lawton, JJ., who dissent and vote to affirm, in the following memorandum.

Denman and Lawton, JJ. (dissenting). We respectfully dissent as we believe that, although the Trial Judge inadvisably engaged in excessive examination of witnesses, his conduct did not deprive defendant of a fair trial. Initially, we note that there was no objection to the court's questions and thus the error is not preserved for our review (CPL 470.05 [2]). Additionally, the court's intervention was not so prejudicial as to invoke our discretionary review in the interest of justice.

The most egregious questioning was that of alibi witness

Susan Figueroa, whom the court asked whether she slept with Brock Taylor, another alibi witness, or whether she slept with defendant. That, of course, was totally inappropriate but we do not believe it is ground for reversal. With respect to the other issues on which the Judge examined the witnesses, he did not establish anything that was not brought out by either the prosecutor or defense counsel in their examination of witnesses. With respect to the telephone call from defendant to Martha DeMers, the prosecutor established on direct that defendant called DeMers asking for Renee, defendant's girl-friend, between 6:30 and 7:00 on the morning following the incident. Under the court's questioning, the witness again stated that defendant called at about 6:30 or 7:00 in the morning but supplied the additional information that it was not a collect call. Although that could have been damaging as tending to establish that defendant was not in Ohio, it was rectified by the subsequent testimony of Taylor, Figueroa, and Renee, all of whom testified that when defendant called Renee from Figueroa's apartment in Ohio, he sometimes made col-lect calls and at other times called directly. The other issue on which the court examined the witnesses concerned the driving time from Jefferson, Ohio, to Buffalo. He questioned both Taylor and Figueroa and established that it took 2½ to 3 hours depending on traffic. Since both the prosecutor and defense counsel had brought out the fact that the driving time is between 2 and 3 hours, the court's questioning was not harmful to defendant. In sum, although the Trial Judge used poor judgment, his intervention served mainly to clarify cer-tain issues and did not deprive defendant of a fair trail. (Appeal from judgment of Supreme Court, Erie County, Kubi-niec, J.—assault, second degree.) Present—Doerr, J. P., Den-man, Green, Lawton and Davis, JJ.